IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

BILLY JOE GRIGGS and )
ASHLEY BLAIRE CO., INC. d/b/a )
EVOLUTION, INC., a Tennessee Corporation, )
)
    Plaintiffs, ) No. 1:12-cv-00193
) Chief Judge Haynes
v. )
)
LF PRODUCTS PTE LTD, d/b/a TRUE )
INNOVATIONS, a Foreign Corporation, )
)
    Defendant. )
)

# MEMORANDUM

Plaintiffs, Billy Joe Griggs, a Tennessee Citizen, and Ashley Blaire Co., Inc. d/b/a Evolution Inc. ("Evolution"), a Tennessee corporation, filed this action under the 28 U.S.C. § 1332, the federal diversity statute, against the Defendant, LF Products PTE LTD d/b/a True Innovations ("LF"), a Singapore Corporation. (Docket Entry No. 1). In their complaint, Plaintiffs asserts claims under California law for breach of contract, and Tennessee law for misappropriation of proprietary information in violation of the Uniform Trade Secrets Act, Tenn. Code Ann. §§ 47-25-1701, et seq., tortious interference with business relations, and breach of covenant of good faith and fair dealing. Plaintiff seeks injunctive relief and damages. Defendants responded with counterclaims that Plaintiff is liable under the for breach of contract and defamation under Tennessee law. (Docket Entry No. 25). Defendants also seek damages on their counterclaims.

Before the Court is Plaintiff Billy Joe Griggs's motion to dismiss the Defendant's counterclaims (Docket Entry No. 29), contending, in sum, that each of Defendant's counterclaims for breach of contract and defamation fail to state any claim upon which relief can be granted. In

response, Defendant contends that it has properly plead these claims and is entitled to money damages on these counterclaims. (Docket Entry No. 70).

For the reasons set forth below, the Court concludes that Defendant's allegations in the pleadings sufficiently state claims for breach of contract and defamation.

## A. Analysis of Counterclaims

According to Defendant's counterclaims, on or about February 9, 2012, Plaintiff Griggs and Defendant entered into an Agreement for the Exchange of Confidential Information (the "Agreement"). (Docket Entry No. 25, Defendant's Answer and Counterclaims, at ¶ 88). The Agreement was executed to "'protect [the parties'] respective Confidential Information from unauthorized use or dissemination' in connection with 'a possible transaction between' LF and Griggs." Id. (citing Docket Entry No. 8-1, the Agreement). The complaint alleges the "possible transaction" was a potential licencing agreement between Griggs and Defendant. Id.

The Agreement defines "Confidential Information" as

> any information of the disclosing party which is fixed in a tangible medium of expression or embodied in an apparatus (such as a computer based data or word processing system or disk), including information in written materials, drawings, photographs, audio recordings, video tapes, electronic media, prototypes, models, or other documents . . . .

Id. at ¶ 90; (Docket Entry No. 81-1, the agreement). The Agreement also provides three exceptions to the definition of Confidential Information:

> a) Information which the receiving party can demonstrate was ascertainable or obtainable from public or published information at the time of receipt by the receiving party.
>
> b) Information which the receiving party can demonstrate is or has become generally known or available to the public through no fault of the receiving party after receipt by the receiving party.

c) Information which the receiving party can demonstrate it has already developed, received, or possessed prior to receipt from the disclosing party.

Id. The Agreement further provides that "[n]either party shall disclose any Confidential Information of the other party to any third part[y] or copy or use the same for any purpose other than in connection with [] the Purpose set for in this agreement." (Docket Entry No. 8-1, the Agreement, at ¶ 2).

According to the counterclaims, between January 30, 2012 and February 3, 2012, LF and Plaintiff Griggs attended the Las Vegas Furniture Show. (Docket Entry No. 25, Defendant's Answer Counterclaims, at ¶ 91). LF further alleges,

> While attending the Las Vegas Furniture Show, LF provided Griggs with certain confidential information relating to LF's prospective customer, Walmart (the "Walmart Information"). Specifically, the Walmart Information included, inter alia, LF's retail strategy concerning a new sofa product for Walmart, along with Walmart-provided specifications for the sofa. LF disclosed the Walmart Information to Griggs for the purpose of the Agreement–towards developing a sofa product under the potential licensing agreement for sale to Walmart.

Id. LF alleges Plaintiff Griggs, in violation of the Agreement, used and disclosed the Walmart Information to Griggs's licensee, Albany Industries, Inc. without authorization from LF, for the purpose of developing and presenting a sofa for sale to Walmart. Id. at ¶ 92.

For its defamation counterclaim, Defendant's counterclaims allege that Plaintiff Griggs engaged in the following acts:

> 99. . . . in late 2012, Griggs met with a buyer for the retail chain Sam's Club, and falsely informed the Sam's Club buyer that LF breached the Agreement and misappropriated Griggs' confidential, proprietary information.

> 100. . . . in late 2012, Griggs met with a buyer for Walmart and falsely informed the Walmart buyer that LF breached the Agreement and misappropriated Griggs' confidential, proprietary information.

3

101. . . . in late 2012, Griggs falsely informed LF's vendor, that LF breached the Agreement and misappropriated Griggs' confidential, proprietary information.

102. The information Griggs' provided to LF, which he alleges included confidential, proprietary information and trade secrets was, in fact, neither proprietary nor confidential. Rather the information provided to LF was well-known in the industry and constituted prior art.

103. . . . in late March or early April, 2013, Griggs provided information and statements concerning the Complaint to the Huntsville Times (the "Times"), an Alabama-based newspaper. The resulting article, published on April 4, 2013, contains a recitation of the Complaint's claims and additional false and defamatory statements by Griggs. . . .

104. On information and belief, in late March or early April, 2013, Griggs provided information and statements concerning the Complaint to Furniture Today, a leading trade newspaper in the international furniture industry. The resulting article, published on April 8, 2013, contains false and defamatory statements about LF.

Id. at ¶¶ 99-104.

## B. Conclusions of Law

As to the merits of the Plaintiff's motion to dismiss, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted)). The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff," but "need not accept as true legal conclusions or unwarranted factual inferences . . . and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." Tam Travel, Inc. v. Delta Airlines, Inc., 583 F.3d 896, 903 (6th Cir. 2009) (citations and quotation marks omitted).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a short and plain

statement of the claim showing that the pleader is entitled to relief." Iqbal, 556 U.S. at 677 (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. "A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id. (citing Twombly, 550 U.S. at 555, 557).

> **To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"**

Iqbal, 556 U.S. at 678 (emphasis added).

The Supreme Court also laid out the underlying principles of this analysis:

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .

Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

**In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions**

> can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 678-79 (emphasis added).

"A motion under Rule 12(b)(6) is directed solely to the complaint itself . . . [.]" Sims v. Mercy Hosp. 451 F.2d 171, 173 (6th Cir. 1971). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." Armengau v. Cline, 7 Fed Appx. 336, 344 (6th Cir. 2001). "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. Id. (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)).

### 1. Breach of Contract

The parties chose California law to govern their Agreement. (Docket Entry No. 8-1, the Agreement, at ¶ 12.). Under California law, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (Cal. Ct. App. 2008).

Griggs contends that Defendant did not allege any facts in support of its allegations because: (1) the alleged information was provided before execution of the agreement, and (2) the alleged information does not fall within the agreement's definition of "Confidential Information". In response, Defendant contends that Griggs disclosed information in violation of the Agreement both before and after the Agreement was executed. According to Dan Tacheny's declaration, Defendant disclosed confidential specifications relating to Walmart's requirements and preferences regarding

a new sofa to Griggs via email after the Las Vegas Furniture, and the execution of the Agreement.. (Docket Entry No. 33, Tacheny Declaration, at ¶ 7). Defendant asserts Griggs later disclosed the aforementioned Walmart information in violation of the Agreement.

Defendant further contends the Agreement, based on its plain language and the parties intention, was designed to protect confidential information disclosed at any time. "Resolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous." Monaco v. Bear Sterns Residential Mortg. Corp., 554 F.Supp.2d 1034, 1040 (C.D. Cal. 2008). "A contract provision will be considered ambiguous when it is capable of two or more reasonable interpretations." Id. (citing Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 5 Cal.4th 854 (1993)). "An ambiguity may appear on the face of an agreement or extrinsic evidence may reveal a latent ambiguity." Fremont Indem. Co. v. Fremont Gen. Corp., 148 Cal. App. 4th 97, 114 (Cal. Ct. App. 2007) (citation omitted).

Griggs asserts a plain reading of the Agreement demonstrates that Griggs did not have a contractual obligation to keep the Walmart information confidential. In pertinent part, the Agreement provides that, "each party **will be** providing certain confidential information . . . to the other party on the condition that parties have entered into this agreement." (Docket Entry No. 8-1, the Agreement). Griggs contends this language is forward looking and illustrates information received prior to its execution falls outside its purview. Yet, under California law,

> **If one side is willing to claim that the parties intended one thing but the agreement provides for another, the court must consider extrinsic evidence of possible ambiguity.** If that evidence raises the specter of ambiguity where there was none before, the contract language is displaced and the intention of the parties must be divined from self-serving testimony offered by partisan witnesses whose recollection is hazy from passage of time and colored by their

conflicting interests.

> Thus, [the Ninth Circuit] held "that courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous."

Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc., No. 1:11-cv-00030 AWISMS, 2011 WL 5838214, at *5 (E.D. Cal 2011) (citing Trident Ctr. v. Connecticut Gen. Life Ins. Co., 847 F.2d 564, 569 (9th Cir. 1988)) (emphasis added and citations omitted).

Here, Griggs and LF have vastly different interpretations of the Agreement's plain language with regard to timing of disclosures. Moreover, Defendant alleges the existence of a contract, the negotiation of a non-disclosure agreement, Griggs's knowledge of the execution of the Agreement, Grigg's breach of the Agreement, and damages as a result of that breach. For their allegations, Defendant submitted the declaration of Dan Tacheny (Docket Entry No. 33, Tacheny Declaration), the Executive Vice President of Millwork Holdings, Co., an LF affiliate, to support its contention that Griggs breached the Agreement before and after the Agreement's execution. Thus, the Court concludes this claim must proceed beyond the pleadings so that the Court may consider the evidence.

## 2. Defamation Claims

For a defamation claim under Tennessee law, a party "must prove that (1) a party published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Hibdon v. Grabowski, 195 S.W.3d 48, 58 (Tenn. Ct. App. 2005) (citing Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999) (relying on Restatement (Second) of Torts § 580 B (1977))).

For such a claim, the Court should first determine "whether a statement is **capable** of a

defamatory meaning." Battle v. A & E Tele. Networks, LLC, 837 F. Supp. 2d 767, 771 (M.D. Tenn. 2011) (citing Memphis Publ'g Co. v. Nicols, 569 S.W.2d 412, 419 (Tenn. 1978)). "If a court determines that the statement or communication is not defamatory, then dismissal of the action is appropriate; otherwise, it is for the jury to determine whether the statement was understood by its intended audience to be defamatory." Battle, 837 F. Supp. 2d at 771. The "'[a]llegedly defamatory statements should be judged within the context in which they are made,' and given their usual meaning, 'as a person of ordinary intelligence would understand them in light of the surrounding circumstances.'" Id. (quoting Revis v. McClean, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000)).

Griggs further contends that the alleged defamatory statements made in "late 2012" are time barred. Griggs asserts that because LF filed its counterclaims on June 11, 2013, any claims that FL might have asserted based on statements made prior to December 11, 2012 are barred by the statute of limitations. Under Tennessee law, slander is subject to a six-month statute of limitations that begins to run as soon as the words are uttered. Tenn. Code Ann. § 28-3-103. In addition, libel is subject to a one-year statute of limitations. Tenn. Code Ann. § 28-3-104. Yet, under Tenn. Code Ann. § 28-1-114(a), a "counterclaim . . . is not barred by the applicable statute of limitations or any statutory limitation of time, however characterized, if it was not barred at the time the claims asserted in the complaint were interposed." See also Guesthouse Int'l Franchise Sys., Inc. v. British Am. Properties MacArthur Inn, LLC, No. 3:07-0814, 2009 WL 278214 (M.D. Tenn. Feb. 5, 2009) ("Because BAP's TCPA claim is a counterclaim, under Tennessee law, the limitations period extends back from the date that the Complaint in this case was filed, that is, August 8, 2007.").

The Court concludes Defendant's defamation counterclaim limitations period extends back to December 21, 2012, the day the Complaint was filed. Thus, the Court concludes the defamation

9

counterclaim is timely under Tennessee law.

Griggs further contends Defendant's defamation claim fails to meet the notice pleading standard because LF failed to plead the exact time, place, and third parties involved in the allegations. "[S]ince the enactment of the Tennessee Rules of Civil Procedure, Tennessee courts apply the notice pleading standard of whether the Plaintiff's complaint contains a sufficient 'short and plain statement of the grounds' for his state law claims." Snedeker v. Fed. Mogul Friction, 2:06-00022, 2006 WL 1697195 (M.D. Tenn. June 14, 2006) (citing Simmons v. Gath Baptist Church, 109 S.W.3d 370, 373 (Tenn. Ct. App.2003)). While more particular allegations would be desirable, the Court concludes Defendant's factual allegations that identify Griggs as person who made the alleged defamatory statements, and to whom Griggs made these defamatory statements,[1] are sufficient to satisfy the notice pleading standard.

Griggs next contends that the defamation counterclaims based on the articles in the *Huntsville Times* and *Furniture Today* must be dismissed because statements therein are judicially privileged. Under Tennessee law, "statements relevant and pertinent to issues pending in, and made in the course of, judicial and administrative proceedings are absolutely privileged and cannot form the basis of a defamation suit." Glennon v. Dean Witter Reynolds, Inc., 83 F.3d 132, 137 (6th Cir. 1996). While the judicial privilege doctrine provides litigants protection to speak freely to the court, "[p]ublication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." Asay v. Hallmark Cards, Inc., 594 F.2d 692, 697 (8th Cir. 1979). Thus, as a threshold issue, the Court concludes Griggs's statements to news publications are not absolutely privileged under the judicial privilege doctrine.

---

[1] Allegedly, Walmart and Sam's Club buyers.

10

Griggs further asserts his statements to the *Huntsville Times* and *Furniture Today* are protected by the fair reporting privileges. Yet, "[t]he Tennessee fair report privilege is a qualified privilege that raises the state of mind requirement in both defamation and false light actions to an actual malice standard. **Media defendants** benefit from this privilege when reporting on 'an official action or proceeding or of a meeting open to the public that deals with a matter of public concern.'" Milligan v. United States, 670 F.3d 686, 696 (6th Cir. 2012) (citations omitted and emphasis added). The Court concludes Griggs's statements are not covered by the fair reporting privilege.

Lastly, Griggs contends his statements to the new media are not actionable because they are clear expressions of option and/or permissible hyperbole. To be actionable, a defamatory statement must be "an articulation of an objectively verifiable event." Stilts v. Globe Int'l, Inc., 950 F.Supp. 220, 223 (M.D. Tenn. 1995). "[S]tatements utilizing words in a loose, figurative manner or as imaginative expression, such as "rhetorical hyperbole," are not properly the subject of a defamation action." Id. Yet, there is not any "wholesale defamation exemption for anything that might be labeled 'opinion.'" Milkovich v. Lorain Journal Co., 497 U.S. 1, 18, (1990). In addition, "a statement of opinion is actionable only **if it implies the allegation of undisclosed defamatory facts as the basis for the opinion.**" Anderson v. Watchtower Bible & Tract Soc. of New York, Inc., No M2004-01066-COA-R9-CV, 2007 WL 161035, at *31 n.21 (Tenn. Ct. App. Jan. 19, 2007) (emphasis added). Here, Griggs's alleged statement to the *Huntsville Times* that LF engages in "underhanded business practices" refers to additional statements that LF "never intended to purchase a license" and used the parties' negotiations as "pre-text to obtain the Plaintiffs' confidential and proprietary information . . . [to] gain an unfair competitive advantage." (Docket Entry No. 25-1). The Court concludes that Griggs's alleged statements to news media imply the allegation of

undisclosed defamatory facts as the basis for the opinion. Accordingly, the Court concludes that Defendant sufficiently states a counterclaim for defamation.

An appropriate Order is filed herewith.

ENTERED this the 16th day of August, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court